UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 6: 09-16-S-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| DOUGLAS C. ADAMS, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Defendant Douglas Adam's motion to suppress a custodial statement made shortly after his arrest on March 19, 2009. [Record No. 329] Following an evidentiary hearing [Record No. 393], United States Magistrate Judge Robert E. Wier recommended that the Defendant's motion be denied. [Record No. 401] Defendant Adams has now filed objections to the Magistrate Judge's Recommended Disposition. [Record No. 476] Having considered the Defendant's objections, the Court concludes that the Recommended Disposition should be adopted. Accordingly, Defendant Adam's motion will be denied.

**I.     Relevant Facts**

Defendant Adams has been charged with engaging in a RICO conspiracy and money laundering activities. Adams was arrested on March 19, 2009, by the FBI, with the assistance of local law enforcement. As outlined by the Magistrate Judge's summary of

relevant facts [Record No. 401, pp. 2-5], Manchester Police Chief Jeff Culver assisted with the arrest of Adams and had interaction with him as Adams was being transported to FCI Manchester for booking. Defendant Adams has moved to suppress an incriminating statement to Culver. This statement, and the facts surrounding it, are summarized in the following portion of the Magistrate Judge's Recommended Disposition:

– Culver alone transported Adams to FCI Manchester for processing. The FBI had arranged to use that facility to manage the large group of defendants. The ride to the prison was brief – about 2 miles. While in transit, Culver "apologized" to Adams and remarked that the situation was "awkward" for the Manchester police. . . . Adams allegedly responded by saying "he understood." The situation was awkward to Culver, because of the professional and family relationships presented between local police and a large group of prominent defendants in a small county. He said he spoke the words to break the tension related to the arrest.

– At FCI Manchester, Culver and others continued to provide security in a large, makeshift booking area. The defendants were all in a main room, segregated from each other. Some of the defendants, Adams included, asked for permission to smoke. Culver received permission to allow smoking in the FCI smoking area, with the defendants under continuing segregation and monitoring. Still pre-*Miranda*, Culver escorted Adams to the smoking area and accompanied Defendant while he smoked.

– While Adams smoked, Culver at some point stated he'd "rather be frog gigging than us to be here under these circumstances." He again stated that he spoke the words as a "tension breaker" or as a way to "pass the time." Adams allegedly responded by saying, ***"I thought that the 2002 election was behind me. I did what I had to do."*** Culver changed the subject after Adams made that statement, discussing his son's upcoming graduation with an education degree. Culver did alert the FBI to the statement when he returned Adams to the main room after Defendant finished smoking.

(Emphasis added; citations to transcript omitted.) [Record No. 401, pp. 3-4]

Defendant Adams argues that, because he was in custody and had not received *Miranda* warnings, the highlighted statement to Culver should be suppressed.[1] However, Magistrate Judge Wier has recommended that the motion to suppress be denied. According to the Magistrate Judge, while this statement was made while the Defendant was in custody, it was not the result of interrogation by law enforcement. The undersigned agrees with this analysis.

In *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980), the Supreme Court addressed the meaning of interrogation in the *Miranda* context, holding that it extends to express questioning as well as its functional equivalent. As Magistrate Wier observed, the "functional equivalent" of express questioning includes "words or actions on the part of the police (other that those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." [Record No. 401, pp. 6, citing *Innis*] *Innis*, however, does not hold police accountable for unforseen results. Instead, the focus of the inquiry is upon words or actions that the police "should have known were reasonably likely to elicit an incriminating response. *Id.* at 302.

The facts presented here do not indicate "interrogation" under *Innis* or the cases which have followed it. Contrary to counsel's arguments, there is no indication that Culver acted with intent to secure the subject statement. And while he did "apologize" for the

---

[1] In his original motion and supporting memorandum, Adams contends that the subject statement was made while Culver was transporting Adams to FCI Manchester for booking. However, it appears that Adams now concedes that the statement was made after Adams arrived at the prison and had asked to smoke while awaiting booking.

awkwardness of the situation, Culver did not play on friendship to elicit any remarks about the charges or the case from Defendant Adams.[2] The remarks made by Adams in response to Culver's "frog gigging" reference cannot be viewed as an objectively foreseeable response. Again, as found by the Magistrate Judge, no objective officer would have known that the discussion or situation was reasonably likely to elicit an incriminating response from Adams and no logical connection exists between Culver's statements and Adams' reference to the 2002 election. Further, from Adam's perspective, Culver's statements cannot be viewed as seeking to elicit a response.

Finally, *Brewer v. Williams*, 97 S.Ct. 1232 (1977), does not require a different result.[3] *Brewer* involved a deliberate effort by police to obtain incriminating evidence from the defendant. Thus, it is easily distinguishable on its facts. Further, as Magistrate Judge Wier noted in his report, courts have expressly distinguished the custodial interrogation standard under the Fifth and Sixth Amendments. *See Fellers v. United States,* 124 S.Ct. 1019, 1022-23 (2004); *Innis*, *supra*, at 300 n.4 (the suggestion that the definition of "interrogation" under *Miranda* in informed by the Supreme Court's decision in *Brewer* is erroneous.)

## II.  Conclusion

The Magistrate Judge's Recommended Disposition does not fail "to connect the dots" as Defendant Adams suggests. Adams' statements to Jeff Culver of the Manchester

---

[2]    Contrary to the Defendant's assertions, there is no indication that Culver was "placed" with Adams due to friendship or any personal relationship between the two.

[3]    It appears that Adams has abandoned this argument by failing to raise it in his objections to the Magistrate Judge's Recommended Disposition.

-4-

Police Department on March 19, 2009, were not the result of custodial interrogation. Neither Culver's conduct nor his comments were reasonably likely to elicit an incriminating statement when viewed from either Culver's or Adam's perspective. Accordingly, it is hereby

**ORDERED** as follows:

1. Defendant Douglas Adams' motion to suppress [Record No. 329] is **DENIED**.

2. The Magistrate Judge's Recommended Disposition [Record No. 401] is **ADOPTED** in full. His findings and conclusions are **INCORPORATED** herein by reference.

3. Defendant Adam's objections [Record No. 476] to the Magistrate Judge's Recommended Disposition are **OVERRULED**.

This 9th day of September, 2009.



Signed By:
*Danny C. Reeves* DCR
United States District Judge